IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| K.L., individually and on behalf of R.L., | HON. JEROME B. SIMANDLE |
| | Civil No. 13-4215 (JBS/JS) |
| Plaintiff, | |
| v. | **OPINION** |
| BERLIN BOROUGH BOARD OF EDUCATION, | |
| Defendants. | |

APPEARANCES:

Catherine Reisman, Esq.
REISMAN COROLLA GRAN LLP
19 Chestnut Street
Haddonfield, NJ 08033-1810
    Attorney for Plaintiff K.L., individually and on behalf of R.L.

Allan P. Dzwilewski, Esq.
Christopher A. Dwilewski, Esq.
SCHWARTZ, SIMON, EDELSTEIN, CELSO & KESSLER
100 S. Jefferson Road
Suite 200 Whippany, NJ 07981
    Attorney for Defendant Berlin Borough Board of Education

**SIMANDLE**, Chief Judge:

I.  **INTRODUCTION**

This matter is before the Court on the motion of Plaintiff K.L., on behalf of R.L., for preliminary injunction and order to show cause in the above action.  [Docket Item 3.]  At oral argument, the parties consented to converting the hearing into the final injunction hearing pursuant to Fed. R. Civ. P. 65.  This action is brought by K.L., on behalf of her daughter, R.L.,

pursuant to Section 615(j) of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j), and involves the discrete issue of what R.L.'s pendent placement is under the IDEA pending adjudication of Plaintiff's current due process petition concerning R.L.'s proposed I.E.P. for in-district placement for Extended School Year 2013 and for the 2013-2014 school year.

On July 2, 2013, the Honorable Patricia M. Kerins, ALJ ("ALJ") issued an Order denying Plaintiff's request that Defendant Board of Education of Berlin Borough ("BOE" or "Berlin") pay for R.L.'s continued placement at Orchard Friends School ("Orchard"). In reaching this conclusion, the ALJ found that Orchard was not R.L.'s "then-current educational placement" pursuant to Section 615(j), 20 U.S.C. § 1415(j). K.L. then filed the instant action seeking to reverse the ALJ's decision. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**II.  BACKGROUND**

The facts of this case are straightforward and mostly undisputed. R.L. was born on July 25, 2003 and resides with her mother, K.L. within the area of Berlin, New Jersey. R.L. is eligible for special education and related services pursuant to the IDEA and has the classification of "multiply disabled."

R.L. attended Berlin public school in 2009-2010 for her Kindergarten year. K.L. found the proposed Extended School Year

("ESY") program for the summer of 2010 inadequate and consequently placed R.L. at Orchard for ESY 2010.  Berlin offered a program to R.L. for the 2010-2011 school year.  R.L. then attended the Berlin program for approximately three weeks in September, 2010.  However, K.L. ultimately transferred R.L. to Orchard for the remainder of the school year.  R.L. then continued her education at Orchard pursuant to an IEP designed and implemented by the Orchard Friends School for the 2010-2011, 2011-2012, and 2012-2013 school years and accompanying ESY sessions.  This IEP was not approved by any state agency.

The last time R.L. was educated in Berlin was September 2010.  The Plaintiff alleges Berlin refused to make an offer of FAPE from 2011-2013 unless R.L. dis-enrolled from Orchard. Berlin neither admits nor denies these facts but maintains that these allegations were the basis of a prior settlement with the parties, which will be discussed, infra.  However, counsel for Berlin did admit at oral argument that Berlin did not offer an IEP to R.L. for the 2011-2012 or 2012-2013 school year.

On July 3, 2012, R.L. filed a request for mediation, seeking reimbursement for the costs of attending Orchard for the ESY 2010, 2011, and 2012 and for the 2010-2011, 2011-2012 and 2012-2013 school years.  The parties initially failed to settle and the request was converted to a due process hearing and transmitted to the Office of Administrative Law.  However, the

parties ultimately settled and on March 13, 2013, the Honorable John F. Russo, Jr., ALJ, issued a "Decision Approving Settlement" which provided for the reimbursement of the 2011 and 2012 ESY programs as well as the 2011-2012 and 2012-2013 school year programs at Orchard.

The agreement also states, in pertinent part, that "K.L. agreed to waive rights under IDEA, including procedural rights (with the exception of the pendency or stay put right set forth in 20 U.S.C. § 1415; it being agreed and understood that pendency or stay put issues are not being determined herein, with both parties maintaining their respective positions regarding the same); . . . "  (Ex. 2 at ¶ 3, pp. 3-4.)  In other words, the parties specifically excluded the issue of whether Berlin public schools or Orchard Friends School was the proper "stay put" placement under § 1415(j) for the years at issue in the compromise settlement.

In April 2013, Berlin proposed an IEP for R.L. that provided for an in-district 2013 ESY and an in-district placement for the 2013-2014 school year.  K.L. did not consent on behalf of R.L. and instead filed a due process petition which is currently pending before the OAL.  Thus, there is no agreement as to K.L.'s placement during the time she has attended Orchard from 2010 through June, 2013.

On June 19, 2013, R.L. filed a petition for emergent relief

with the New Jersey Office of Special Education Programs ("OESP") seeking a finding that Orchard was R.L.'s pendent placement and that R.L. would be permitted to stay at the ESY program at Orchard at Berlin's expense. K.L. asserted that the ESY program at Orchard constituted the "stay put" placement for R.L. and Berlin opposed. The ALJ heard oral argument on the request for relief on June 28, 2013 and issued her opinion denying emergent relief on July 2, 2013.

The ALJ reasoned that Orchard was not R.L.'s "then-current educational placement" pursuant to 20 U.S.C. § 1415(j) because Berlin did not consent to R.L's placement at Orchard. The ALJ noted that K.L. unilaterally placed R.L. in Orchard's program and Berlin never agreed to this placement. The ALJ concluded that the settlement agreement for reimbursement did not constitute an agreement by Berlin that R.L.'s placement at Orchard was appropriate. Specifically, the settlement agreement never called for placement at Orchard and only provide for a compromise tuition reimbursement for past expenses. This was insufficient, according to the ALJ, to constitute an agreement by Berlin that Orchard was an appropriate placement for R.L. Importantly, the ALJ noted that nothing under the IDEA prevented R.L. from staying at Orchard. The only issue is whether K.L. or Berlin would be responsible to pay. The ALJ concluded that K.L. would be responsible for tuition at Orchard should R.L. remain there

during the pendency of the administrative proceedings.

The Plaintiff K.L., on behalf of R.L., filed the instant action and motion for preliminary injunction seeking to reverse the ALJ's decision. K.L. argues that Orchard should be deemed the "then-current educational placement" under 20 U.S.C. § 1415(j) and that Berlin should be required to pay tuition for the 2013 ESY program and the 2013-2014 school year during the pendency of the administrative proceedings. Berlin opposes and argues that the ALJ decision should be upheld. The Court heard oral argument on July 30, 2013 and will now issue its decision.

The Opinion contains the Court's findings of fact and conclusions of law upon the motion for injunctive relief, pursuant to Rule 52(a)(2), Fed. R. Civ. P. All counsel have agreed that the preliminary injunction and final injunction hearings are combined pursuant to Rule 65(a)(2), Fed. R. Civ. P., for purposes of determining the only issue presented by the Complaint, namely, whether the ALJ's decision of July 2, 2013, that K.L.'s present attendance at Orchard is not the "then-current educational placement" under Section 615(j) of the IDEA should be affirmed or reversed.

### III. DISCUSSION

#### A. Parties' Arguments

The Plaintiff argues that the ALJ erred by relying on the

fact that Berlin did not agree to the placement at Orchard in determining R.L.'s "current educational placement." The Plaintiff maintains that the ALJ's decision minimized the importance of parental participation in the special education process and is incompatible with controlling Third Circuit precedent. Finally, the Plaintiff maintains that the ALJ misinterpreted the case law relied upon in reaching the decision.

Berlin opposes Plaintiff's motion and urges the Court to uphold the ALJ's decision. First, Berlin maintains that the decision below is correct as a matter of law. Second, Berlin points out that neither the Plaintiff nor the Defendant argue waiver. Finally, Berlin maintains that the ALJ properly interpreted the relevant case law and Plaintiff's arguments to the contrary are without merit.

The Plaintiff filed a reply in further support of her motion which reiterates the arguments made in her moving papers.

**B. Standard of Review**

"When reviewing an ALJ decision in an IDEA case, the district court applies a de novo standard to questions of law." C.T. ex. rel. M.T. v. Verona Bd. of Educ., 464 F. Supp. 2d 383, 385 (D.N.J. 2006). In contrast, findings of fact by the ALJ are considered by the district court under a modified de novo standard of review which requires due weight be given to the factual findings of the ALJ. L.E. v. Ramsey Bd. of Educ., 435

F.3d 384, 389 (3d Cir. 2006).

Both parties agree that the issue before the Court is purely an issue of law. Therefore, the Court will apply a de novo standard of review.

**C. Analysis**

The issue before the Court is whether the ALJ erred in concluding Orchard was not R.L.'s "current educational placement" under Section 1415(j).

Section 1415(j) provides, in pertinent part, "During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). In addition, it is well established that Section 1415(j) functions as an automatic preliminary injunction such that the typical requirements for injunctive relief do not apply. Drinker v. Colonial School District, 78 F.3d 859, 864 (3d Cir. 1996). The Third Circuit has held that "the dispositive factor in deciding a child's 'current educational placement' should be the [IEP] . . . actually functioning when the 'stay put' is invoked." Id. at 867. The Third Circuit explained:

> Implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act.

8

Id. at 865 (quoting Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982)).

However, "where a parent unilaterally removes a child from an existing placement determined in accordance with state procedures, and puts the child in a different placement that was not assigned through proper state procedures, the protections of the stay-put provision are inoperative until the state or local educational authorities and the parents agree on a new placement." Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dis., 202 F.3d 642, 651 (3d Cir. 2000). "Only once state authorities and parents have reached such agreement does a 'then-current educational placement' come into existence." Id.

In this case, it is undisputed that R.L. was removed from the Berlin program in September 2010 and this removal was done unilaterally by K.L. Consequently, the last educational placement of R.L. in September 2010 was the in-district placement in Berlin pursuant to the IEP then in effect.

Plaintiff argues that Berlin refused to offer R.L. an IEP program from 2011-2013 and consequently, for those school years, Plaintiff did not remove R.L. from a state program. Plaintiff essentially argues that the stay-put provision should be restarted every school year, regardless of whether a parent has already unilaterally removed a child from an existing state program.

9

Plaintiff's argument is unpersuasive and against controlling precedent. Case law is clear that once a parent unilaterally removes a child from an existing state program governed by an IEP, the protections of the stay-put provision cease until the parent and the school agree on a new placement. The Third Circuit, in <u>Michael C.</u>, <u>supra</u>, expressly addressed a parent's decision to unilaterally enroll a child in private school and the financial risk entailed. Specifically, the Third Circuit explained:

> [I]f parents believe that private school placement remains the only way to provide the student with the educational benefit required by the IDEA, or otherwise disagree with an IEP proposal, they can place the child in a private school, initiate a due process hearing, and seek reimbursement from educational authorities later. Of course, they act at their own financial risk, and will recover only if they are correct that local authorities have failed to provide the educational program to which their child is entitled under the IDEA.

<u>Michael C.</u>, 202 F.3d at 651 (citations omitted). Therefore, Plaintiff's argument that the protections of stay-put should apply absent an agreement between K.L. and Berlin is without merit. Plaintiff unilaterally removed R.L. from a functioning IEP program at Berlin and enrolled R.L. in a private school without seeking Berlin's consent. Consequently, Berlin is the operative stay-put placement unless it can be shown that Berlin subsequently agreed to Orchard as a proper placement.

The main issue is whether the settlement agreement approved by the Board of Education and ALJ Russo constituted an agreement

10

between the parties that Orchard was an appropriate placement for R.L. If it did, then the stay-put provision of § 1415(j) would recognize Orchard as the "then-current educational placement" and Plaintiff's motion should be granted. If it did not, then Orchard cannot be considered R.L.'s "then-current educational placement," and Berlin would be, pending resolution of the ongoing due process petition before the ALJ.

The ALJ below found that the settlement agreement was simply an agreement for reimbursement and did not constitute an agreement between the parties that Orchard was a proper placement. The ALJ based this conclusion on the factual finding that the record did not show that an IEP was in place between Plaintiff and Berlin when due process was sought on June 18, 2013. (ALJ Decision, Ex. 2 at 5.) The ALJ reasoned that the settlement only provided for reimbursement and did not on its face determine placement. In addition, neither party waived its rights regarding the stay-put issue. (ALJ Decision, Ex. 2 at 7.) The Court will uphold the ALJ decision and likewise finds that Orchard is not R.L.'s "then-current educational placement" for purposes of the stay-put provision.

The settlement agreement here expressly states that "pendency or stay put issues are not being determined herein, with both parties maintaining their respective positions regarding the same." (Settlement Agreement ¶ 3.) There is no

11

agreement by the parties with respect to placement embodied in the settlement. Rather, it is clear that the parties contested the proper placement and sought to mutually preserve their rights to raise these issues in a later proceeding. Consequently, the settlement agreement is merely an agreement for reimbursement and does not constitute an agreement between Berlin and K.L. about R.L.'s placement at Orchard.

Furthermore, Plaintiff's counsel admitted at oral argument that the IEP developed by Orchard for R.L. was not approved by the state. Therefore, the Court cannot conclude that another state agency approved of R.L.'s placement in Orchard. If another state agency had approved of this placement, it would be a much closer question.[1]

Plaintiff's reliance on Pardini v. Allegheny Intermediate Unit, 420 F.3d 181 (3d Cir. 2005) is misplaced. In Pardini, the Third Circuit held that a child receiving IDEA services in the form of an Individualized Family Service Plan ("IFSP") was entitled to have her IFSP services continued while litigating the appropriateness of a proposed IEP. Id. at 182. The child in Pardini, who was turning three, was transitioning from IFSP services for children zero to three years old to IEP services for children three years and up. Id. at 182, 185. The parents

---

[1] Indeed, Plaintiff's counsel admitted at oral argument that Orchard is not a New Jersey approved special education school.

disputed the removal of conductive education from the proposed IEP because conductive education was included as part of the current IFSP.  Id. at 182.  The child's IFSP plan was approved and implemented by a state agency.  Id.

The Third Circuit held that the child was entitled under the stay put provision to receive conductive education services while the proposed IEP was being litigated.  Id. at 190-191.  In reaching this conclusion, the Third Circuit reasoned that "the IDEA both anticipates and condones the possible interchangeability of an IFSP and an IEP during transition to preschool."  Id. at 191.  Thus, the school district's obligations pending a due process hearing were to provide the services last agreed to in the IFSP plan . . . administered by a state agency when the current IDEA claim erupted.

This is distinct from the instant case.  In Pardini, the child was transitioning from one state-approved IDEA program to another state-approved IDEA program.  Here, R.L. is attempting to stay put in a unilateral placement in a private school which was never approved by a state agency.  The stay put provision does not apply to such a situation and Pardini does not hold otherwise.

Next, Plaintiff argues that the E.D. Pa. case Lauren W. v. Bd. of Educ., 2002 U.S. Dist. LEXIS 18303, *1 (E.D. Pa. Sept. 12, 2002).  After reviewing this case, the facts here are distinct

13

from Lauren W., despite Plaintiff's representations to the contrary. In Lauren W., the school district contested Plaintiff's current placement and had previously reimbursed the Plaintiff for private school. 2002 U.S. Dist. LEXIS 18303, at *7. The district court concluded that the private school was the child's "then-current educational placement" for the stay-put provision. Id. at *10-11. In reaching this conclusion, the district court expressly found that the Board "accepted a recommendation that Lauren continue to be placed at [the private school], and approved payment of the tuition costs for Lauren's placement at [the private school]. Id. at *5. The district court reasoned that "the parties' agreement as to [the private school] being an appropriate placement for Lauren for the 2000-2001 school year compels this court to conclude that [the private school] became Lauren's "then-current educational placement" as of the 2000-2001 school year pursuant to § 1415(j)." Id. at *10.

This is distinguishable from the case at bar, despite Plaintiff's counsel's representations to the contrary.[2] In this

---

[2] Plaintiff's counsel was also the counsel for the plaintiffs in Lauren W. Plaintiff's counsel admits that the district court opinion finds that the school board agreed to place Lauren in private school; however, Plaintiff's counsel maintains that no agreement ever took place and this factual finding is erroneous. This Court is in no position to doubt the explicit factual findings contained in the district court's written opinion. The Third Circuit did not reach a contrary factual finding in its subsequent decision, Lauren W. v. DeFlaminis, 480 F. 3d 259 (3d Cir. 2007). Therefore, the Court finds Plaintiff's contrary factual representations without merit.

14

case, the Board approved a compromise on Plaintiffs' claim for tuition reimbursement for the years 2010-13 and for ESY's 2010, 2011 and 2012, but expressly reserved the right to contest placement for stay-put purposes. There is no evidence that the Board can be found to have agreed to R.L.'s placement at Orchard when the written settlement agreement expressly denies such an agreement and preserves both parties' rights. Therefore, Lauren W. is distinguishable and does not support the proposition that the "then-current educational placement" is a unilateral placement.

Finally, the Plaintiff argues that since no IEP was in place at the time the dispute arose, R.L.'s current educational placement is where R.L. is actually receiving instruction, which is Orchard. This proposition finds support in the Third Circuit's analysis in Drinker, only if no prior IEP had been implemented. The Court of Appeals explained:

> Because the term connotes preservation of the status quo, it refers to the operative placement actually functioning at the time the dispute first arises. If an IEP has been implemented, then that program's placement will be the one subject to the stay put provision. And where . . . the dispute arises before any IEP has been implemented, the 'current educational placement' will be the operative placement under which the child is actually receiving instruction at the time the dispute arises.

Drinker, 78 F.3d at 867 (quoting Thomas v. Cincinnati Bd. of Educ., 918 F.3d 618, 625-26 (6th Cir. 1990)).

However, Plaintiff's argument ignores one key fact –

15

Plaintiff unilaterally removed K.L. from the state-approved, functioning IEP program at Berlin in 2010. Consequently, Plaintiff relinquished the protections of the stay-put provision at her own financial risk as of 2010. While there was no functional IEP in place at the time the dispute arose, this was a circumstance of Plaintiff's making. The Plaintiff chose to leave the Berlin IEP in September 2010 and this IEP was the last functional IEP between the parties. Consequently, this dispute did not arise before a functional IEP was in place - it arose after the Plaintiff unilaterally removed R.L. from a functional IEP placement at Berlin.

Therefore, the Court finds that Orchard is not R.L.'s "current educational placement" for purposes of § 1415(j). The Plaintiff unilaterally removed R.L. from the Berlin IEP program in September 2010. The Board never agreed to R.L.'s placement at Orchard. "Only once state authorities and parents have reached such agreement does a 'then-current educational placement' come into existence." Michael C., 202 F.3d at 651. Since no agreement was reached between the parties with regard to placement at Orchard, or for the implementation of an IEP at Orchard, Orchard cannot now be considered R.L.'s "then-current educational placement," and the obligation to pay for R.L.'s educational expenses at Orchard pending the ALJ's adjudication of Plaintiff's due process petition remains with Plaintiff. As the

16

Third Circuit made plain in Michael C., Plaintiffs act at their own financial risk "and will recover only if they are correct that local authorities have failed to provide the educational program to which their child is entitled under the IDEA." Michael C., supra, 202 F.3d at 651.

**IV. CONCLUSION**

Accordingly, the decision of the ALJ will be affirmed and Plaintiff's motion for injunctive relief pending adjudication of Plaintiff's due process hearing will be denied. The Court will enter the accompanying Order.

 **August 7, 2013**                                       **s/ Jerome B. Simandle**
Date                                                     JEROME B. SIMANDLE
                                                         Chief U.S. District Judge